United States Court of Appeals,

Eleventh Circuit.

No. 94-2149.

UNITED STATES of America, Plaintiff-Appellee,

v.

Gary Lorenzo JOHNSON, Defendant-Appellant.

July 31, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-126-CR-Orl-19), Patricia C. Fawsett, Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and SCHWARZER[*], District Judge.

SCHWARZER, Senior District Judge:

Rule 11(e)(1) of the Federal Rules of Criminal Procedure directs that the district court will not participate in any discussions to reach a plea agreement. Appellant Gary Lorenzo Johnson contends that the district court violated this injunction. We reject the contention, and other claims asserted, and affirm.

*Proceedings Below*

On the eve of trial, Johnson pled guilty to two counts of an eight-count indictment: count one, charging conspiracy to possess with intent to distribute 50 grams of crack, and count five, charging possession of five or more grams of crack with intent to distribute. The government dismissed two forfeiture counts against him. Johnson was sentenced but, following this court's decision in *United States v. Rockman,* 993 F.2d 811 (11th Cir.1993), the government moved for resentencing and this court remanded for

---

[*]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

resentencing of Johnson.  At the start of the resentencing hearing, Johnson moved to withdraw his guilty plea, but the motion was denied.  He was sentenced to 127 months followed by five years supervised release.  On this appeal, Johnson raises several points, the principal one being the alleged violation of Rule 11(e)(1).

 *Violation of Rule 11(e)(1)*

Johnson contends that during the colloquy preceding entry of his plea the court participated in the plea discussions in violation of Rule 11(e)(1).  He argues that the district court violated Rule 11(e)(1) when, after he had said on at least three occasions that he could not plead guilty to the amount of cocaine charged by the government in the conspiracy count, the court made the following statement:

> Mr. Pesquera, let me discuss this with you and Mr. Johnson. It would seem to me that if he pleads guilty to Count V, he is admitting the substantive offense.  Then the government will come in and prove the conspiracy.  He could certainly take a gamble that the jury would find he had not conspired with the substantive offense, but he would have already pled guilty to the facts of the substantive offense, and the only issue would be whether he conspired with anyone else.  It doesn't have to be a jury question as to the amount.

Johnson contends that when the court said, "let me discuss this with you ...," she was participating in plea discussions.

To determine whether a violation of Rule 11(e)(1) occurred, the court's statement must be viewed in context.  At the plea hearing, held on November 12, 1991, the following relevant exchanges occurred:

> THE COURT:  What is the situation in this case?

> MR. PESQUERA (Defense counsel):  My client has decided to enter a plea of guilty to both counts of the indictment in which he appears.

MR. JANCHA:  The government will be dismissing the forfeiture count.

THE COURT:  No plea agreement?

MR. PESQUERA:  That's right.  (Tr. 2)

                    *   *   *   *   *   *

After Johnson was sworn and gave his name, the court asked him:

Q. I've been advised you want to enter a plea of guilty to Counts One and Five.  Those are felony counts.  Do you understand that?

A. Yes, I do.  (Tr. 3)

                    *   *   *   *   *   *

Q. I was told by Mr. Pesquera and Mr. Jancha [government counsel] there is no plea agreement in this case.  Do you understand that?

A. Yes, Your Honor.  (Tr. 4)

                    *   *   *   *   *   *

Q. Have you decided you just want to plead straight up?

A. Yes.  (Tr. 5)

                    *   *   *   *   *   *

Q. Do you understand the charges against you?

A. Count One is the one I believe we are going to argue with.

Q. Count One is the conspiracy charge?

A. Yes, Your Honor.

Q. That charges a violation of Title 21, United States Code, Section 846 ... (court describes the elements of the offense).

A. Yes.

Q. What are you telling me about an argument with the charge?

A. On our Count One it say [sic] 50 grams or more of a mixture of cocaine base.  What I'm saying is I didn't sell 50 grams. I sold 34.6 grams.

Q. So you contest the amount of cocaine?

A. Yes, Your Honor.

Q. Do you contest anything else about the charges against you in Count One?

A. No, besides the 50 grams or more.

Q. There is a disagreement as to the amount of cocaine and you do enter a plea of guilty to the charge against you. You are telling me you do not agree with the amount of cocaine, but you do admit there was some cocaine involved?

A. Yes, Your Honor.

Q. (Court explains that the court will rule on amount of cocaine at the sentencing hearing and that it could impact the sentence.) (Tr. 7-9)

*   *   *   *   *   *

Q. ... You understand you have no obligation to enter a plea of guilty to any charge in this case? Is that clear to you?

A. Yes, Your Honor.

Q. You have told me you want to plead guilty to Counts [sic] One and Count Five. Do you feel anyone had done anything which you consider wrong or unfair to get you to plead guilty to these charges?

A. I wouldn't call it unfair, but in Count One with the amount and years I'm facing, I feel a man should be tried on what he sold....

THE COURT: Mr. Jancha, do you feel the government has evidence there was the ability to deliver the difference between the 36 and in excess of 50 grams that's been charged?

MR. JANCHA: Yes, Your Honor. (Tr. 10-11)

*   *   *   *   *   *

THE COURT: Mr. Johnson, I'll go back to what I told you a few minutes ago. I will have to hear evidence on this. I want to stress to you I could rule against you on this. I don't know. I haven't heard the evidence, and I've got an open mind on it. If I rule against you, that could increase the penalty. You understand that?

A. Yes, Your Honor.

Q. So if you enter a plea of guilty and we get to the sentencing and you don't like your sentence, you are not going to be able to withdraw your plea of guilty. Do you

understand?

A. Yes.

Q. Do you feel that you have been threatened, pressured or coerced or treated improperly in order to get you to plead guilty?

A. It would go back to the same statement.

Q. The disagreement over the amount?

A. Yes.

Q. Aside from your disagreement over the amount, any improper position that's been taken, or pressure placed on you?

A. No, Your Honor.

Q. Do you want to plead guilty to these charges because you are guilty to [sic] the charges, or for some other reason, even being mindful that you disagree as to the amount?

A. Yes, I will want to plead guilty because I am guilty. (Tr. 11-13)

* * * * * *

After eight more transcript pages of colloquy concerning sentencing, Johnson asked:

Q. ... May I ask you something?

A. Yes.

Q. You say I have two counts.  Ain't no way I could plead guilty to Count Five and try to fight the Count One?  I can't do nothing like that?

THE COURT:  Well, Mr. Pesquera?

MR. PESQUERA:  I explained to him the government is not willing to dismiss any of these two counts.  We would have to plead to both counts.

THE COURT:  Could he plead to one and try to [sic] the other one?  I'm not aware that's a possibility.

MR. JANCHA: Judge, I'm ready to try the case. Theoretically, it's possible.  I don't think it would be a real smart move if he took the stand, overt acts of conspiracy in Count One.  If he wanted to do it, that would be fine with me, but I don't believe it would be of any benefit.

THE COURT:  Mr. Pesquera, let me discuss this with you and Mr. Johnson.  It would seem to me that if he pleads guilty to Count Five, he is admitting the substantive offense.  Then the government will come in and prove the conspiracy.  He could certainly take a gamble that the jury would find he had not conspired with the substantive offense, but he would have already pled guilty to the facts of the substantive offense, and the only issue would be whether he conspired with anyone else.  It doesn't have to be a jury question as to the amount.

MR. PESQUERA:  That's what I was just explaining to him.

THE COURT:  Mr. Johnson, I believe you could go to trial on Count One and plead guilty to Count Two [sic].  You are going to have to decide that and talk to your attorney and tell me what you want to do.

THE DEFENDANT:  I plead guilty to both of them.

THE COURT:  Even though you know you could go to trial on one and plead guilty to the other?

THE DEFENDANT:  Yes, Your Honor.  (Tr. 21-23)

\* \* \* \* \* \*

After further colloquy, the court addressed the factual basis for

the conspiracy charge.

MR. PESQUERA:  Based on my conversation with the defendant, I don't think there would be a sufficient factual basis to accept a guilty plea on the conspiracy count.  He denies he ever—

MR. JANCHA:  The government is ready for trial, Your Honor.

THE COURT:  Mr. Johnson, I am going to decline to accept your plea to Count One because you are telling me you didn't conspire with anyone else....  (Tr. 28-29)

\* \* \* \* \* \*

After further colloquy as to factual basis:

THE COURT:  Mr. Jancha, I am uncomfortable accepting a plea of guilty to Count One based on a statement he bought from someone who did not know he was going to distribute it.  (Tr. 29)

\* \* \* \* \* \*

After colloquy with government counsel:

THE COURT:  Mr. Pesquera and Mr. Johnson, I am going to let you make a decision whether you want to proceed on Count Five.

MR. PESQUERA:  If we are going to try the case, we might as well try the whole thing.

THE COURT:  Are you going to follow your attorney's advice?

THE DEFENDANT:  Yes.

THE COURT:  So you are withdrawing your plea.  I am not going to accept your plea to Count One if you are telling me you did not conspire with anybody, you did not possess with intent to distribute cocaine.  That's what I understood you saying.

THE DEFENDANT:  What he just said, could I answer on that?  I would like to question what he said, what Mr. Miles [with whom he allegedly conspired] has said.

THE COURT:  You want to talk to me about that?

THE DEFENDANT:  Explain when me and Mr. Miles had that conversation.

THE COURT:  Did you have a conversation?

THE DEFENDANT:  Yes, we had a conversation.

THE COURT:  Mr. Jancha has stated facts which show conspiracy. If your client wants, I'll let Mr. Jancha make a statement. If that appears to me to be sufficient to uphold the conspiracy plea of guilty, I'll ask you if what you heard is true and correct, and if you tell me yes, I will entertain your question.  Make a statement of the facts the government would intend to prove beyond a reasonable doubt if this case went to trial.  I am going to ask you if you understand and if it is true and correct.  (Tr. 29-30)

\*   \*   \*   \*   \*   \*

Government counsel makes proffer of the conspiracy evidence and

counsel recites the evidence at length.  (Tr. 30-32)

\*   \*   \*   \*   \*   \*

THE COURT:  Did you understand what Mr. Jancha said to me and do you feel it is true and correct?

THE DEFENDANT:  Yes.

THE COURT:  I think that does show conspiracy.  Do you take issue?

MR. PESQUERA: No, I agree with the Court.

THE COURT: Do you want me to go ahead in this proceeding.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there any anything you want to tell me or want to ask me that bears on your decision to plead guilty that I have not covered with you?

THE DEFENDANT: No, ma'am, Your Honor.

THE COURT: Anything you want to talk to your attorney about privately before I ask you how you plead?

THE DEFENDANT: No. (Court then takes guilty plea to Count One and Count Five.) (Tr. 32-33)

Rule 11(e)(1) provides that "[t]he attorney for the government and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon entering of a plea of guilty ..., the attorney for the government will [dismiss charges, agree to recommend or not oppose a request for a particular sentence, or agree that a specific sentence is appropriate]." Fed.R.Crim.P. 11(e)(1). It then states: "The court shall not participate in any such discussions." *Id.*

Here, the court was advised by counsel at the outset of the proceedings that there was no plea agreement and none was contemplated. Johnson intended to plead to both counts with which he was charged and the government then intended to dismiss the forfeiture count. No discussions concerning the terms of the plea or the sentence that would be imposed occurred during the colloquy by the court, other than the advice Rule 11(c) requires the court to give a defendant. Thus, it cannot be said that the court participated in "discussions with a view toward reaching an agreement." *Compare United States v. Bruce,* 976 F.2d 552, 555 (9th

Cir.1992) (court explained advantages of sentencing under plea bargain offered by government and urged defendants to "think seriously about it.").

Because no plea discussions occurred here, the literal terms of the rule do not apply. But the decisions under it have put a gloss on the rule to implement a broader purpose. As stated in *United States v. Casallas,* 59 F.3d 1173 (11th Cir.1995), "Rule 11's prohibition on court participation in plea negotiations "is designed to totally eliminate judicial pressure from the plea bargaining process.' " *Id.* at 1178 (quoting *United States v. Corbitt,* 996 F.2d 1132, 1135 (11th Cir.1993)). "Three rationales have been advanced for the strict prohibition on judicial participation: (1) "judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty'; (2) the prohibition "protects the integrity of the judicial process'; and (3) the ban preserves the judge's impartiality after the negotiations are completed." *Casallas,* 59 F.3d at 1178 (quoting *Bruce,* 976 F.2d at 556-57). Thus, we have found a violation of the rule where the court in the colloquy with defendant contrasted the 15-year minimum sentence defendant faced by going to trial in Texas with the 10-year minimum term he faced if he plead guilty and advised him to "talk to his lawyer some and see if that is really what he wants to do." *Casallas,* 59 F.3d at 1176, 1178. Similarly, we found a Rule 11 violation where the court told defendants that they had until noon that day to file plea agreements, after which time they "will plead straight up or

... go to trial" and then said of defendants in the court generally that "they'll get a fair trial, and if they get found guilty, they'll also get a fair sentence, fairly high." *Corbitt,* 996 F.2d at 1133-35.

We have interpreted Rule 11(e) as a "bright line rule" " "prohibit[ing] the participation of the judge in plea negotiations under any circumstances:  it is a rule that, as we have noted, admits of no exceptions.' "  *Casallas,* 59 F.3d at 1177 (quoting *Bruce,* 976 F.2d at 558);  *see also United States v. Adams,* 634 F.2d 830, 839 (5th Cir.1981) ("Rule 11(e)(1) establishes an absolute ban on judicial participation [in plea negotiations]").  We have not, however, addressed the specific question of what constitutes plea discussions (or negotiations) within the meaning of Rule 11. *Casallas* and *Corbitt* indicate that discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned.  As we explained in *Corbitt:*

> The purpose and meaning of [the Rule 11(e)(1) ] prohibition are that "the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty...."
>
> *The primary concern of those who would dissociate the judge from the plea bargaining process has been that judicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter.*

996 F.2d at 1134 (quoting *United States v. Werker,* 535 F.2d 198, 201 (2d Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976)) (emphasis added).

The statements made by the district court here did not touch on the sentence Johnson might receive;  at no point in the colloquy

did the court contrast the consequences Johnson faced were he to go to trial with the consequences he faced if he pled.

Nor can the court's statements be read as coercive in any other way. Far from pressuring Johnson into entering a plea, the judge went out of her way to remind him repeatedly that he was free to make the choice. The complained-of statement that Johnson takes out of context occurred near the end of the lengthy plea-taking colloquy. *See supra* p. 2875 (court's statement beginning "Mr. Pesquera, let me discuss this...."). In response to Johnson's question whether he could plead to the substantive count and go to trial on the conspiracy, the court simply explained (correctly) that because he would have already admitted the substantive offense, the government would then only have to prove that he conspired. The most natural reading of the court's statements in context is that they warned Johnson of the obvious risk should he plead guilty to the substantive offense and then go to trial on the conspiracy charge. In any event, following the complained-of statements, the judge made it clear that Johnson had the choice: "I believe you could go to trial on Count One and plead guilty to Count Two [sic, Five]. You are going to have to decide that and talk to your attorney and tell me what you want to do." *See supra* p. 2876. That Johnson himself did not regard the complained-of statement as coercive is shown by the fact that he then indicated that he intended to go to trial on both counts. *See supra* pp. 2876-2877.

Given Johnson's earlier vacillations, the court sought to verify that Johnson was withdrawing his plea. *See supra* p. 2877.

But in response, Johnson resumed the colloquy by asking about the factual basis for the conspiracy charge.  With the apparent agreement of Johnson and his counsel, the court then invited government counsel to state the government's conspiracy evidence. Johnson agreed that government counsel's statement was true and correct, the court found that a factual basis existed, and Johnson then pleaded guilty to both counts.  *See id.*

In sum, we find nothing coercive in the manner in which the court conducted the plea hearing.  The court went to some lengths to satisfy the requirements of Rule 11(c)(1) (requiring the court to inform the defendant of the nature of the charge to which the plea is offered) and Rule 11(f) (requiring the court to inquire as to the factual basis for the plea).  The district court must, of course, take care not to conduct the plea taking process in a way that may coerce a defendant;  thus, once a defendant indicates a wish not to proceed further, that wish must be honored.  In this case, while Johnson at times raised questions indicating doubts about whether he should plead guilty, at no time did he accept the court's invitations to break off the colloquy and go to trial. Accordingly, we find no violation of Rule 11.

*Factual Basis for the Plea*

Johnson argues that there was no factual basis for the plea because he denied having participated in a conspiracy and admitted only to having sold 34 grams of crack, not 50 grams as charged. Johnson's contention is barred by his guilty plea.  "A guilty plea, since it admits all the elements of a formal criminal charge, waives all nonjurisdictional defects...."  *United States v.*

*Fairchild,* 803 F.2d 1121, 1124 (11th Cir.1986) (quoting *United States v. Jackson,* 659 F.2d 73, 74 (11th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1637, 71 L.Ed.2d 870 (1982)) (internal quotations omitted) (holding claim of insufficient factual basis to support indictment waived by plea);  *see also United States v. Willis,* 992 F.2d 489, 490 (4th Cir.) ("A knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction."), *cert. denied,* 510 U.S. 857, 114 S.Ct. 167, 126 L.Ed.2d 127 (1993).

Moreover, Johnson's argument is based on the fallacious assumption that the government had the burden of establishing the quantity of drugs attributed to Johnson.  The quantity of drugs involved is not an element of the offense but is relevant only to sentencing.  *Wilson v. United States,* 962 F.2d 996, 998 n* (11th Cir.1992);  *see also United States v. Musa,* 946 F.2d 1297, 1302–03 (7th Cir.1991) (sufficient factual basis for plea where defendant disputed the amount of drugs but not the facts of the offense).

Finally, the record amply supports the plea.  At the plea-taking hearing, counsel for the government recited at length what the government's evidence would show at trial.  Among other things, the government offered to prove that Johnson's alleged co-conspirator Miles had previously dealt with the government agent, that Miles and Johnson had conversations about that dealing, that Miles had told him that the agent paid in $100 bills, and that Miles was uncomfortable dealing with the agent whom he suspected of being a police officer.  Johnson delivered 36.8 grams of crack to

an agent and offered to deliver three ounces the next day. Johnson admitted these facts to be true and correct. We conclude that the district court did not abuse her discretion in finding a factual basis for the plea. *See United States v. Lopez,* 907 F.2d 1096, 1100-01 (11th Cir.1990).

 *Denial of Motion to Withdraw Guilty Plea*

Johnson moved on the day of resentencing (some two years after entry of the plea) to withdraw his plea. The court denied the motion. Under Fed.R.Crim.P. 32(d), "the defendant has the burden of showing a "fair and just reason' for withdrawal of his plea." *United States v. Buckles,* 843 F.2d 469, 471 (11th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989). "In determining whether the defendant has met this burden, the district court may consider the totality of the circumstances surrounding the plea." *Id.* at 471-72. The decision to allow withdrawal of a guilty plea is left to the sound discretion of the trial court and may be reversed only if it is arbitrary or unreasonable. *Id.* at 471.

The only argument Johnson made for withdrawing his plea is that the district court should have known that Johnson did not knowingly plead to the conspiracy count. Johnson is a high school graduate, attended technical school for two years, and admits to having no trouble reading and understanding English. The district court held an evidentiary hearing on the motion. Johnson argues that the transcript of the plea hearing was wrong wherever it said that Johnson was pleading guilty to both counts. The court determined that the transcript was correct. Johnson has not shown

that the district court was in error.  The denial of the motion was neither arbitrary nor unreasonable.

*Ineffective Assistance of Counsel*

Johnson argues that his trial counsel "failed to require a factual basis for all elements of the conspiracy" and "failed to properly apply" the Guidelines Manual to the charges.  The argument is baseless, first, because there was no legal error in connection with the entry of the plea, and, second, because the sentence imposed, 136 months, was within the range of the 121-150 months estimated by his counsel at the plea-taking hearing.

The judgment is AFFIRMED.