[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 13-12970; 13-12971
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20745-UU-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLINGTON NEVARDO LEWIS,
a.k.a. Nev,
DANNY LEWIS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 3, 2014)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Carlington Nevardo Lewis appeals his conviction for conspiracy to tamper with a witness, 18 U.S.C. § 371, and his brother, Danny Lewis, appeals his conviction for possession of a firearm and ammunition by a felon, *id.* § 922(g)(1). The Lewises challenge their pleas of guilty, which they entered after a jury acquitted them of some charges in their second superceding indictment and before a second trial commenced on their remaining charges. The Lewises argue, for the first time, that the district court ignored the "core concerns" of Federal Rule of Criminal Procedure 11 when it accepted their guilty pleas, and Danny also argues that he was entitled to a hearing on his motions to discharge his trial counsel and to withdraw his plea of guilty. We affirm the Lewises' convictions and vacate the judgment against Danny and remand with instructions to correct a clerical error.

Danny and Carlington argue, for the first time, that the district court violated its duties to ensure that their pleas were free from coercion and were made with an understanding of the nature of their charges and the consequences of their pleas, *see* Fed. R. Crim. P. 11, but we review these arguments only for plain error. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). Plain error exists only when there is an error that is plain and that affects substantial rights. *Id.* And an error is not plain unless there is a decision by the Supreme Court or this Court directly resolving the issue. *Id.* "[A] defendant who seeks reversal of [a] conviction after a guilty plea, on the ground that the district court committed plain

2

error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 1020 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004)).

The district court did not err, plainly or otherwise, in ensuring that Danny's and Carlington's guilty pleas were not coerced. Danny and Carlington argue that statements the district court made during their first trial and before commencement of their second trial "evidenc[ed] partiality for the government" and compelled them to plead guilty, but the statements conveyed only a warning to the Lewises that any threat made to government witnesses could affect their sentences; exhibited surprise at the verdicts of the jury; and exhorted the government about its presentation of evidence. Even if we were to assume that the statements were coercive, neither Danny or Carlington argue that they would not have pleaded guilty had the statements not been made. *See Moriarty*, 429 F.3d at 1020. And the Lewises fail to cite any authority holding that biased statements made by a trial court preceding an offer to plead guilty can create an environment that would coerce a defendant to change his plea from not guilty to guilty. *See id.*

The record reflects that Danny and Carlington were not coerced to plead guilty. Danny and Carlington stated during their separate oral plea colloquies that they had not been threatened, coerced, or forced "in any way" to plead guilty, and both men admitted that they were guilty after being advised of their right to persist

3

in a plea of not guilty.  *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); *United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("[T]here is a strong presumption that the statements made during the colloquy are true.").  Although Danny moved to withdraw his plea of guilty, he sought that relief on the ground that trial counsel was ineffective.

Danny and Carlington argue that the district court made coercive statements immediately before they decided to change their plea, but these arguments fail regardless of the standard of review.  Danny and Carlington argue about being pressured to plead guilty when the district court said that it was "not going to give [them] a lot of time" and that the parties would have to "talk and eat at the same time," but the district court was entitled to set a deadline for plea negotiations when it had already seated a jury for Danny and Carlington's second trial.  *See United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir. 1999) ("[T]he prerogative of prosecutors and defendants to negotiate guilty pleas is outweighed by judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses." (internal quotation marks and citation omitted)).  Danny complains about the district court instructing trial counsel to "[s]it down and talk to

4

your client" and later asking Danny "what are we doing," but the district court was entitled to inquire whether Danny would go to trial or enter a change of plea. *See United States v. Johnson*, 89 F.3d 778, 783–84 (11th Cir. 1996). The district court also did not create a coercive atmosphere when it commented that "usually when people get arrested for petty theft, they don't recruit their brother to kill the informant" to explain why it mentioned during voir dire that Danny was in possession of several guns. Carlington accuses the district court of participating in plea agreements when it told him that he had until the next day to decide to plead guilty, *see* Fed. R. Crim. P. 11(c)(1), but the district court did not suggest that Carlington plead guilty, *see Johnson*, 89 F.3d at 783–84. We find nothing coercive about the manner in which the district court conducted Danny's and Carlington's change of plea hearings.

The district court did not err, plainly or otherwise, in ensuring that Danny and Carlington understood the nature of their charges. The Lewises complain that the district court failed to mention each element of their offenses during the change of plea hearing, but "Rule 11(c) does not specify that a district court must list each element of the offense *seriatim*," *United States v. Wiggins*, 131 F.3d 1440, 1442–43 (11th Cir. 1997). And the district court was entitled to find that Danny and Carlington understood the charges against them because they had completed a trial on the charges; they had high school educations; they had signed a plea agreement

5

acknowledging the elements of their crimes; they had been read their charges by the district court; they verified that they had reviewed the indictment with their attorneys and that they understood and agreed to "each and every fact" in their factual proffers; and they were given the opportunity to ask questions about their charges. *See id.*

The district court also did not err, plainly or otherwise, in ensuring that the Lewises understood the consequences of pleading guilty. Danny and Carlington argue that they were not advised how a jury would be instructed if they exercised their right not to testify, but the district court "need not explain the possible collateral consequences of a guilty plea," *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003); *see* Rule 11(b)(1). Danny argues that he was not fully informed of his right against self-incrimination, but the district court told him that he would be waiving "the right on [his] part to decline to testify unless [he] voluntarily elected to do so in [his] own defense." Danny and Carlington argue they were not advised about their maximum punishment, but the transcript of Carlington's oral colloquy and the corrected transcript of Danny's oral colloquy reflect that they were told the maximum statutory sentence for their crimes. Although the original transcript states that Danny responded "no" when asked if he understood his punishment, he did not object when the transcript was corrected to reflect that his answer was "yes." Even if the district court had erred in any of

6

these respects, we cannot reverse the convictions when the Lewises do not argue that they would not have pleaded guilty but for the alleged errors. *See Moriarty*, 429 F.3d at 1020.

The district court also did not abuse its discretion by refusing to hold a hearing on Danny's motion to discharge his trial counsel or on his motion to withdraw his plea of guilty. Danny sought relief based on the alleged ineffectiveness of his counsel, but he twice affirmed during his change of plea hearing that he was "fully satisfied with the counsel, representation and advice" provided by his attorney. "[T]here is a strong presumption that the statements made during the colloquy are true," *Gonzalez–Mercado*, 808 F.2d at 800 n.8, and the district court reasonably determined that Danny failed to satisfy his "heavy" burden, *see Rogers*, 848 F.2d at 168, to rebut that presumption with the self-serving allegations made in his motion to discharge. Danny argues that the district court was obliged to hold a hearing "to conduct a searching inquiry into the voluntariness of [his] guilty plea," but that inquiry must occur "[b]efore accepting a plea of guilty." *See United States v. Siegel*, 102 F.3d 477, 480–81 (11th Cir. 1996) (citing Rule 11(c)(1)). And the district court was entitled to deny Danny's motion to withdraw because he had enjoyed the close assistance of counsel before entering his plea of guilty; his plea had been entered knowingly and voluntarily; and allowing him to withdraw his plea would have wasted judicial resources and

7

prejudiced the government by having to prepare for and conduct another trial.  *See United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006).

We notice a clerical error in the written judgment against Danny.  The written judgment fails to make clear the disposition of seven charges against Danny in counts 3, 5, 6, 7, 8, 9, and 11 in the second superceding indictment, which the government agreed to dismiss after Danny entered his guilty plea.  The judgment instead reflects the following unintelligible statement: "Count(s) Number of Count(s) and is or are dismissed on the motion of the United States."  The docket sheet states that the district court accepted Danny's plea of guilty to count 2, dismissed counts 3, 5, 6, 7, 8, 9, and 11, and that he had been acquitted of counts 1, 4, 10, and 11; that the district court sentenced Danny to 120 months of imprisonment; and that Danny is presently serving that sentence.  We vacate the written judgment and remand for the district court to enter a new judgment stating, consistent with the docket sheet, that Danny pleaded guilty to count 2 and that counts 3, 5, 6, 7, 8, 9, and 11 are dismissed.

We **AFFIRM** the Lewises' convictions, and we **VACATE** the judgment against Danny and **REMAND** with instructions for the district court to correct a clerical error.

8